FILED

JAN 18 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Seizure of )
*(Briefly describe the property to be seized)* )
All moneys, funds and credits in or attributable to ) Case No. **19MJ0260**
J.P. Morgan Chase Bank acct. no. 3403255959 held )
in the name of Nam Phong H Le. )

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the ___Southern___ District of ___California___ is subject to forfeiture to the United States of America under ___18___ U.S.C. §§ $981(a)(1)(A)$ & $982(a)(1)$ *(describe the property)*:

All moneys, funds and credits in or attributable to J.P. Morgan Chase Bank acct. no. 3403255959 held in the name of Nam Phong H Le.

The application is based on these facts:

See Attached Affidavit

☒ Continued on the attached sheet.

_____
*Applicant's signature*

Nicholas Pilcher, Special Agent, SSA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/18/19

_____
*Judge's signature*

City and state: San Diego, California        Hon. Linda Lopez, U.S. Magistrate Judge
*Printed name and title*

I, Nicholas Pilcher, being duly sworn, hereby depose and state the following:

## TRAINING AND EXPERIENCE

1. I am a Special Agent with the Social Security Administration – Office of Inspector General ("SSA-OIG"), and have been employed with SSA-OIG since January 2010. I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am authorized by law to conduct investigations and make arrests for felony offenses.

2. Since on or about January 2010, I have specialized in investigations of fraud against the United States, theft by public officials, mail and wire fraud, and related offenses, such as money laundering, false statements, and others. My work has particularly focused on fraud against the Social Security Administration ("SSA"), by which I was employed from September 2002 until January 2010. In the course of my duties, I have become familiar with the techniques, strategies, and behavior of individuals who have committed such crimes, and who seek to conceal such illicit activities from detection.

3. The facts set forth in this Affidavit are based on my personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; my review of documents and computer records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a seizure warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## DESCRIPTION OF BANK ACCOUNTS TO BE SEIZED

4. This affidavit is submitted in support of an application for the issuance of a seizure warrant for the following bank accounts (collectively the "Target Accounts"):

   a. All moneys, funds, and credits, not to exceed $44,306.54, in or attributable to Comerica Bank in Direct Express account number 53324800089312602 (hereafter "Comerica Account") held in the names of Tinh Tran and Phuong Vu.

b. All money, funds, and credits, not to exceed $44,306.54, in or attributable to J.P. Morgan Chase Bank in account number 1810610328 (hereafter "Chase Account #1"), held in the name of Nam Phong H Le.

c. All moneys, funds, and credits, not to exceed $44,306.54, in or attributable to J.P. Morgan Chase Bank account number 3413826401 (hereafter "Chase Account #2"), held in the name of Nam Phong H Le.

d. All moneys, funds, and credits, not to exceed $44,306.54, in or attributable to J.P. Morgan Chase Bank account number 3403255959 (hereafter "Chase Account #3), held in the name of Nam Phong H Le.

## STATUTORY BASIS FOR SEIZURE AND FORFEITURE

5. Pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1), all property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § § 1956 and 1957 or any conspiracy to commit any such violation, and any property traceable to any such property, is subject to forfeiture to the United States.

6. Theft of Government Property in violation of Title 18, United States Code, Section 641, Wire Fraud in violation of Title 18, United States Code, Section 1343, and Identity Theft in violation of Title 18, United States Code, Section 1028 are all forms of specified unlawful activity for purposes of money laundering as defined in Title 18, United States Code, Section 1956(c)(7).

7. This Court is empowered to issue a seizure warrant for any property subject to forfeiture pursuant to 18 U.S.C. § 981 and 18 U.S.C. § 982, and Rule 41 of the Federal Rules of Criminal Procedure.

## STATEMENT OF PROBABLE CAUSE

A. OVERVIEW

8. The Social Security Administration ("SSA") administers a number of programs that have the basic objective of providing for the material needs of individuals and their families, including the Supplemental Security Income ("SSI") program, which is designed to provide a floor of income for the aged, blind or disabled who have little or no income or resources.

9.     To qualify for SSI, an individual must be a United States citizen or a legally admitted alien, and reside in the United States or the Northern Mariana Islands. An SSI recipient who ceases to be a resident of the United States or the Northern Mariana Islands, or who has been outside of the United States or the Northern Mariana Island for thirty consecutive days or a calendar month becomes ineligible for SSI.

10.    On August 1, 2010, NAM-PHONG HUNG LE (hereafter "LE") began to work for SSA, first as a claims representative and later as a technical expert in the SSA District Office located in El Cajon, California. As a part of his official duties, LE would process and adjudicate SSI claims and post-entitlement actions for SSI recipients already in pay.

11.    LE left SSA employment on January 6, 2018, and began to work as an investigator with the United States Office of Personnel Management. LE subsequently resumed employment with SSA on September 16, 2018, as a technical expert in the SSA District Office located at 1333 Front Street in San Diego, California.

B. SSI RECIPIENTS TINH TRAN & PHOUNG VU.

12.    Tinh Tran ("T.T." and Phoung Vu ("P.V.") began to receive SSI benefits as a married couple in the year 2000. From at least 2002 until June 5, 2017, T.T. and P.V. received their monthly SSI benefits via direct deposit into a Union Bank account. According to TECS records, on June 5, 2017, T.T. and P.V. departed the United States from Los Angeles International Airport on a flight bound for Taipei, Taiwan. There is no record in TECS of either T.T. or P.V. returning to the United States, and they were therefore ineligible for SSI based on non-residence after June 5, 2017.

13.    SSA maintains a log of all computer inputs performed by employees at their work terminals. According to that log, LE performed a series of "queries" and "updates" on the record for T.T. Notably, in June 2017, LE terminated the existing Union Bank direct deposit of T.T. and P.V.'s SSI benefits and directed that future payments be made through a newly-created Direct Express account through Comerica Bank.

14. Records provided by Comerica Bank for the Comerica Account indicate that on August 23, 2017, the bank received a telephone call for a replacement card from "T.T." requesting the address of record for the account be updated from T.T. and P.V.'s address of record with SSA to a new address on "Screamview Drive" – with a street number, City and Zip identical to an address on "Streamview" Drive that California Department of Motor Vehicles records indicate LE provided as his mailing address on March 29, 2011.

15. LE provided the same Streamview Avenue address for two emergency contacts with SSA in September 2018. The same Streamview address has also been the SSA address of record for LE's mother since 2014.

16. On September 5, 2017, SSA initiated direct deposits of $2,265.21 for T.T. and $2,265.21 for P.V. into the Comerica Account, representing the July, August and September 2017 benefits SSA believed each of them to be eligible to receive. Comerica Bank records show five ATM withdrawals at locations in San Diego totaling $4,515.00 during the month of September 2017. The first of these withdrawals occurred at 33rd and El Cajon Blvd. on September 5, 2017, when $503.00 cash was withdrawn. The four remaining ATM withdrawals occurred at 4627 College Avenue.

17. On September 6, 2017, $1,003.00 was withdrawn from the Comerica Account, at 4627 College Avenue, and according to J.P. Morgan Chase Bank records obtained for LE's Chase Account #1, a $1,000.00 cash deposit was made into Chase Account #1 at the same ATM on September 6, 2017.

18. Similarly, on September 13, 2017 $1,003.00 was withdrawn from the Comerica Account at 4627 College Avenue. Records for Chase Account #1 show three ATM cash deposits at the same location on the same date, totaling $1,040.00.

19. On September 29, 2017, SSA initiated two direct deposits of $755.07 for T.T. and P.V.'s October 2017 SSI benefits. There were two more ATM withdrawals during October 2017 at the same location – 4627 College Avenue – totaling $1,506.00. On November 1, 2017, SSA made the same twin deposits of $755.07, which were followed by an ATM withdrawal of

$1,003.00 on November 3, 2017, and an ATM withdrawal of $523.00 on November 8, 2017, both at 4627 College Avenue. On December 1, 2017, SSA deposited T.T. and P.V.'s December SSI benefits, which were followed by three $500 ATM withdrawals on December 9, 2017.

### C. SSI RECIPIENT R.W.

20. As a part of his duties as an SSA technical expert, LE had access to electronic records for SSI recipients. According to SSA's computer logs, LE queried the records of R.W., an SSI recipient, on December 21, 2017. At that time, R.W. had a $2,425.88 underpayment (meaning unpaid money owed to the beneficiary by SSA) showing on his SSA record, and LE directed R.W.'s underpayment be direct deposited into the Comerica Account.

21. Comerica Bank records show $2,425.88 deposited from SSI on December 26, 2017, quickly followed by a $1,003.00 ATM withdrawal from an ATM located at 4627 College Avenue on December 27, 2017.

22. T.T. and P.V.'s January 2018 SSI benefits (now increased to $766.07 each due to annual cost of living adjustments) were deposited on December 29, 2017. ATM withdrawals out of the Comerica Account occurred at 4627 College Avenue on December 29, 2017 ($1,003.00), December 31, 2017 ($1,003.00), and January 3, 2018 ($903.00), left a balance of just $55.61.

### D. ONGOING SSI FRAUD: JANUARY 2018 – SEPTEMBER 2018

23. Although LE stopped working for SSA on January 6, 2018, T.T. and P.V.'s monthly SSI benefits continued to be deposited into the Comerica Account. Comerica Bank records indicate that the pattern of ATM withdrawals continued, with $1,003.00 withdrawals at 4627 College Avenue on February 25, 2018, March 2, 2018, March 5, 2018, and April 10, 2018. A $603.00 ATM withdrawal at the same location occurred on April 12, 2018, a balance of just $37.03 in the account.

24. After T.T. and P.V.'s monthly benefits were direct deposited on May 1, 2018, there was another $1,003.00 withdrawal from the 4627 College Avenue ATM location on May 3, 2018. A $543.00 ATM withdrawal at 4440 Wightman Street in San Diego occurred on May 6, 2018, leaving just $23.17 in the Comerica Account.

- 5 -

25. Similarly in June, just after SSA's direct deposits on the first of the month, $1,003.00 was withdrawn from the 4627 College Avenue ATM on June 1, 2018, followed by a $513.00 withdrawal from an ATM located at 503 Telegraph Canyon Road in Chula Vista, California the next day. T.T. and P.V.'s July 2018 SSI benefits were withdrawn in two ATM transactions at the 4627 College Avenue ATM location, $1,003.00 on July 3, 2018 and $523.00 on July 4, 2018, leaving just $45.45 in the account.

26. T.T. and P.V.'s August benefits were deposited on the first of the month, and on August 5, 2018 another $1,003.00 withdrawal occurred at the same 4627 College Avenue ATM, followed by a $503.000 withdrawal the next day at the 4440 Wightman Street ATM. On August 31, 2018, P.V.'s $766.07 monthly benefit was deposited, but only $689.47 was deposited for T.T. due to SSA determining that a $153.20 overpayment (that is, funds that SSA determined had been erroneously paid out to a beneficiary) had been made on T.T.'s account, which resulted in the monthly benefit being decreased for two months. On September 4, 2018, $1,003.00 was withdrawn via ATM at 24799 Alicia Pkwy in Laguna Hills, California, followed on September 6, 2018 by a $503.00 ATM withdrawal at the 4627 College Avenue ATM in San Diego.

E. LE'S RETURN TO SSA EMPLOYMENT

27. On September 16, 2018, LE returned to SSA employment and began work as a technical expert at SSA's District Office located at 1333 Front Street in San Diego, California.

28. On October 1, 2018, P.V.'s $766.07 monthly SSI payment and T.T.'s reduced $689.47 monthly SSI payment were deposited into the Comerica Account, and on October 4, 2018, $1,003.00 was withdrawn from an ATM located at 1415 India Street, three blocks west of the SSA District Office.

29. Once again, as a part of his duties as an SSA technical expert, LE had access to electronic records for SSI recipients. According to SSA's computer logs, on or about October 3, 2018, LE queried T.T.'s record and then waived the $153.20 overpayment, resulting in a $153.20 deposit into the Comerica Account. Comerica Bank records show $153.20 deposited from SSI on October 5, 2018.

F. SSI RECIPIENTS LAWRENCE MYLES AND DAVID LANGSTON

30. According to SSA's computer logs, LE queried the records of L.M., an SSI recipient, on October 4, 2018. At that time, L.M. had a $3,682.44 underpayment showing on his SSA record. SSA computer logs indicate that on October 4, 2018, LE directed L.M.'s underpayment be deposited into the Comerica Account. Comerica Bank records show $3,682.44 deposited from SSI into the Comerica Account on October 9, 2018, and that on October 10, 2018, $1,003.00 was withdrawn via an ATM located at 1280 4th Avenue in San Diego, three blocks east of the SSA District Office.

31. Another SSI recipient, "D.L.", had a $4,126.73 underpayment showing on their record. SSA logs indicate that on October 9, 2018, LE queried D.L.'s SSA records, and directed D.L.'s underpayment be deposited into the Comerica Account. Comerica Bank records show $4,126.73 deposited from SSI into the Comerica Account on October 11, 2018, and on the same day a $1,003.00 withdrawal from an ATM at 145 Broadway, five blocks southeast of the SSA District Office.

32. Based on bank records provided for Chase Account #2, a $2,000 cash deposit was made into LE's account on October 11, 2018 at 501 H Street in Chula Vista.

33. Comerica Bank records showed two $1,003.00 ATM withdrawals occurring at 4440 Wightman Street in San Diego: the first on October 12, 2018 and the second on October 13, 2018. I determined that this location is a J.P. Morgan Chase Bank branch, and I was able to obtain video from J.P. Morgan Chase Bank for these two (and several additional) ATM transactions.

34. The district manager of the SSA District Office in San Diego identified LE from the video provided by Chase Bank as an individual using their ATM on October 13, 2018, at the time that bank records indicate the withdrawal occurred. I am also personally familiar with LE, and I identified LE from the video provided for October 12, 2018, as an individual using the J.P. Morgan Chase Bank ATM around the time that the withdrawal occurred.

35. On October 18, 2018, on October 21, 2018, and on October 23, 2018, $1,003.00 was withdrawn at the 4627 College Avenue ATM. J.P. Morgan Chase Bank provided video for

each of these transactions, and the SSA district manager identified LE as an individual using the J.P. Morgan Chase Bank ATM around the time of the withdrawal on October 23, 2018. I identified LE as an individual using the 4627 College Avenue ATM around the time of each of these ATM transactions.

36. On October 26, 2018, another $1,003.00 was withdrawn via ATM at 4440 Wightman Street. Both the district manager and I identified LE as an individual using the ATM around the time of this transaction.

37. Based on records provided by J.P. Morgan Chase Bank for LE's Chase Account #2, LE made a $1,000.00 cash deposit at the ATM located at 101 W. Broadway in San Diego on October 24, 2018.

38. Based on records provided by J.P. Morgan Chase Bank for LE's Chase Account #1, on October 24, 2018, LE made a $1,500.00 ATM cash deposit at 101 W. Broadway.

39. Based on records provided by J.P. Morgan Chase Bank for LE's Chase Account #3, $1,500.00 was transferred into the account from Chase Account #2 on October 26, 2018.

40. On November 1, 2018, T.T. and P.V. were each paid $766.07 in SSI benefits for November 2018 via direct deposit into the Comerica Account.

41. On November 2, 2018, LE withdrew $1,003.00 from the Comerica Account via an ATM located at 4440 Wightman Street. On November 3, 2018, LE withdrew another $903.00 via an ATM at the same location. Both the district manager and I identified LE as an individual using the 4440 Wightman Street ATM around the time of each of these transactions.

G. SSI RECIPIENT E.R.

42. Yet another SSI recipient with an underpayment, "E.R.", had a $1,268.60 underpayment showing on his record. SSA was informed by the State of California that E.R. had died on September 2, 2018. SSA logs indicate that on October 29, 2018, LE queried E.R.'s SSA record, and directed E.R.'s underpayment be deposited into the Comerica Account. Comerica Bank records show $1,268.60 deposited from SSI on November 13, 2018.

### H. CONTINUING FRAUD LOSSES TO SSA DURING INVESTIGATION

43.  SSA internal audits flagged LE's electronic queries and actions, and as a result an investigation was commenced in November 2018. The matter was referred to the Social Security Administration – Office of Inspector General, and assigned to me for further investigation.

44.  While waiting for records to be produced, I was notified by the district manager for the SSA District Office in San Diego about an additional inquiry by LE. I learned that a $979.00 underpayment intended for an SSI recipient, Charles Twing "C.T.", was issued by SSA into the Comerica Account under LE's authority on December 3, 2018.

45.  I was informed that LE was out of the office on leave from December 10, 2018 until January 2, 2019. I confirmed via TECS that LE was in fact outside of the United States from December 10, 2018 until December 30, 2018.

46.  On January 15, 2019, I was notified by the district manager for the SSA District Office in San Diego about an additional inquiry by LE. I learned that a $2,813.23 underpayment intended for an SSI recipient, "M.P.", was issued by SSA into the Comerica Account under LE's authority on January 8, 2019.

47.  I have not yet obtained the computer logs or the Comerica Bank records for either the December or January transactions.

48.  SSA records indicate T.T. and P.V. were wired SSI payments in December 2018 ($766.07 each) and January 2018 ($782.07 each due to a cost of living adjustment).

49.  At this time, SSA has suffered a total loss of approximately $44,306.54 in SSI benefits fraudulently issued by LE into Comerica Bank account 533248000893 12602.

### I. ARREST OF LE & LE'S POST ARREST STATEMENTS

50.  On January 16, 2019, the Hon. Linda Lopez authorized a criminal complaint and arrest warrant for LE under Southern District of California case number 19MJ0196.

51.  On the morning of January 17, 2019, LE was arrested outside of his residence in Chula Vista, California. After being advised of his rights, LE chose to provide me with a statement.

52. LE admitted that T.T. and P.V. were family friends, and that they had closed the bank account where they were receiving their SSI benefits just prior to leaving the United States for Vietnam in June 2017.

53. LE admitted that he caused T.T. and P.V.'s SSI payments to continue by the creation of the Comerica Account despite both being ineligible for any SSI payments as non-residents of the United States.

54. LE further admitted that he called the Direct Express customer service line and impersonated T.T. in order to change the mailing address of record for the Comerica Account. LE admitted that he requested a replacement ATM/debit card and that he received the card after it was mailed to his mother's home in San Diego.

55. LE admitted that after receiving the ATM/debit card issued in August 2017 only he accessed the Comerica Account and all the funds deposited therein. LE admitted withdrawing the money from the Comerica Account via ATM and to thereafter depositing the money into his personal bank accounts.

56. LE admitted that he had not seen or communicated with T.T. or P.V. since June 2017, and that he had not visited the part of Vietnam where he believes them to now reside. LE admitted that he had set up the Comerica Account to ensure that SSA continued to pay SSI benefits to T.T. and P.V.

57. LE admitted that he had on approximately three occasions identified individuals owed an "underpayment" from SSA and directed those funds be deposited into the Comerica Account. LE also admitted that it was he who had accessed the funds in the Comerica Account, and that he thereafter deposited the funds into his personal bank accounts.

58. LE voluntarily surrendered the ATM/debit card in T.T.'s name associated with the Comerica Account, and was transported to the M.C.C. and booked without further incident.

## THE TARGET ACCOUNTS

### Comerica Account – Tinh Tran & Phoung Vu

59. According to bank records, Tinh Tran ("T.T.") and Phoung Vu ("P.V.") are the names on the Comerica Account, which LE opened in June 2017, thereby causing SSA to continue paying T.T. and P.V.'s SSI benefits when no such benefits should have been paid.

60. On or about August 23, 2017, LE called Direct Express customer service, impersonated T.T., and updated the address of record for the Comerica Account to "5102 Screamview Drive, San Diego, CA 92105." Thereafter, LE received the replacement ATM/debit card through the mail, and exclusively used it to withdraw the funds in the Comerica Account at ATM locations in the Southern and Central Districts of California.

61. Between June 2017 and January 2019, $44,306.54 in unauthorized deposits were made by SSA into the Comerica Account, including $29,010.66 in unauthorized SSI payments intended for T.T. and P.V., and an additional $15,295.88 in SSI underpayments intended for other SSI recipients.

62. According to bank records, the Comerica Account had an ending balance of $1,303.38 on November 13, 2018.

63. Since November 13, 2018, SSA records show that additional monthly SSI payments intended for T.T. and P.V. totaling $3,096.28, and two SSI underpayments totaling $3,792.23 intended for C.T. and M.P., have been deposited into the Comerica Account.

### Chase Accounts #1-3 — Nam Phong H Le

64. According to bank records, Chase Account #1, Chase Account #2, and Chase Account #3 are each held solely by "Nam Phong H Le." As of November 2018, the address of record for each account was LE's residence in Chula Vista, California.

65. According to bank records, Chase Account #1 had an ending balance of $3,844.00 on November 13, 2018.

66. According to bank records, Chase Account #2 had an ending balance of $12,967.52 on November 14, 2018.

67. According to bank records, Chase Account #3 had an ending balance of $14,981.44 on November 28, 2018.

## CONCLUSION

68. Based upon my training and experience, and the facts and circumstances outlined within this affidavit, I submit that there is probable cause to believe that the Target Accounts have been utilized to receive stolen government funds, used to launder the stolen funds by concealing and disguising the true ownership of the accounts, and transmit proceeds fraudulently obtained from SSA.

69. As set forth above, there is probable cause to believe that any and all funds held by the Target Accounts, except where otherwise noted, are subject to seizure and forfeiture as: (1) property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956 or § 1957 ... and any property traceable to any such property, and subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A); (2) property, real or personal, involved in an offense in violation of 18 U.S.C. § 1956 or § 1957, and any property traceable to such property, and subject to forfeiture pursuant to 18 U.S.C. § 982(a)(1).

70. By reason of the above, I respectfully request that the Court issue a seizure warrant for all moneys, funds, and credit in or attributable to the listed Target Accounts. In addition, to avoid unnecessary costs to the government, I respectfully request that the seizure warrant contain instructions to Bank of America to refrain from issuing a check to the government for any of the Target Accounts containing less than $2,500 on deposit at the time of execution.

Nicholas Pilcher
Special Agent
Social Security Administration
Office of the Inspector General

Sworn to and subscribed before
me on this 18 day of January, 2019.

Honorable Linda Lopez
United States Magistrate Judge

- 12 -